MINNIE F. GODWIN, AS ADMINISTRATRIX OF THE ESTATE OF J. J. GODWIN, DECEASED, J. A. MAULTSBY AND N. A. MATHEWS, APPELLANTS, v. W. B. PHIFER, H. L. PHIFER AND J. A. PHIFER, APPELLEES.

1. It is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. This principle applies to all bills in equity, but is especially applicable to bills seeking an injunction, the rule being that the title or interest of the complainant and the facts upon which he predicates his prayer for such relief must be stated positively, with clearness and certainty. The bill must state facts and not opinions or legal conclusions.

2. When an application is made to the court for a temporary injunction or restraining order, without notice to the de-

fendant, the allegations in the bill should be even more carefully scanned and considered than when the defendant has been served with notice and has the opportunity of resisting the application. Before granting a temporary injunction or restraining order, without notice, the court should be satisfied that a clear case is made by the bill therefor, and also that it has been clearly made to appear that it is a case of urgent necessity and one in which irreparable mischief will be produced if the aid of the court is denied.

3. An affidavit to or an allegation in a bill for an injunction asserting simply the legal conclusion that notice to the defendant of the application for injunction will accelerate the injury apprehended, is not a sufficient excuse, and furnishes no reason, for dispensing with notice. To justify the granting of an injunction *ex parte* and without notice the allegations of the sworn bill or accompanying affidavit must state facts showing how and why the giving of notice will accelerate or precipitate the injury complained of, from which the court can determine for itself whether the giving of notice will, or is likely to, so result, and such facts must make it manifest to the court that the giving of notice of the application will, or is likely to, have such result.

4. Not only must the allegations in the bill for an injunction be clear, direct and positive, but they must be verified by an affidavit, which must also be direct and positive; and, where any of the material allegations in the bill are stated upon information, there should be annexed to the bill the additional affidavit of the person from whom the information is derived, verifying the truth of the information thus given.

5. The insolvency of the debtor is never a sufficient reason of itself for the exercise of the extraordinary power of the court by way of injunction. There must be some other equitable ground combined with insolvency.

6. The failure of a purchaser of timber to pay the balance of the purchase money therefor at the time stipulated in the contract does not of itself furnish sufficient ground for a cancellation of the contract by a court of equity.

7. The writ of injunction is an *extraordinary*, not an *ordinary*, every-day writ, and it should never be granted lightly, but cautiously and sparingly, and notice should always be required to be given in accordance with Equity Rule 46, unless the provisions therein for dispensing with notice have been strictly followed. The writ of injunction is a highly beneficial writ, but great care should be exercised in awarding it, lest it be turned into an instrument of oppression and injury.

8. Even where all the equities of the bill are denied by the answer, it is not a matter of course to dissolve the injunction, both the granting and continuing of injunctions resting largely in the sound judicial discretion of the court, to be governed by the circumstances of the case, but, where an abuse of this judicial discretion is clearly made to appear, it is the duty of an appellate court to interfere.

9. If it is plainly apparent that the bill is without equity, an injunction should not be granted in the first instance, but, if granted, should be dissolved at the earliest opportunity by the court and the bill ordered dismissed.

10. When a cause is set down for a hearing upon the bill and answer, all the averments of the answer are to be taken as true, and, where the answer contains the usual general denial found in answers in chancery and contains no admission of certain material allegations in the bill, such allegations cannot be assumed to be true, the burden being upon the complainant to prove such allegations as well as the matters denied in the answer.

This case was decided by Division A.

Appeal from the Circuit Court for Alachua County.

STATEMENT.

On the 25th day of September, 1905, the appellees filed their bill in chancery in the Circuit Court in and for Alachua county against the appellants, alleging therein, in substance, that on the 23rd day of May, 1904, H.  L.

Phifer and J. A. Phifer, two of the appellees, and J. W. Phifer, since deceased, made and entered into a certain contract with J. J. Godwin, since deceased, a copy of which contract is attached to the bill as an exhibit and made a part thereof, and which is as follows:

"State of Florida }
Alachua County. }

This contract made and entered into by and between J. W. Phifer, H. L. Phifer and J. A. Phifer of the county and State aforesaid parties of the first part, and J. J. Godwin of the county of Alachua and State of Florida, party of the second part, Witnesseth: That the said parties of the first part for and in consideration of the sum of thirty five cents per tree for each sound pine tree measuring fourteen inches and upward minimum diameter measure at the top of the stump two feet above the ground to be paid as hereinafter provided, have bargained, sold, granted and conveyed and by these presents do bargain, sell, convey and granted unto the said party of the second part and to his heirs and assigns, all the pine timber over fourteen inches minimum diameter measure at the top of the stump two feet above the ground, situate and being upon the following described lands lying and being in the county of Alachua and State of Florida, and more particularly described as follows, to-wit: The West half of the Northwest quarter and the West half of the Southwest quarter Section 5 Township 10 South Range 22 East; Also lots one and two Section 6 Township 10 South Range 22 East; also the West half of the Southwest quarter of Section 4 Township 10 South Range 22 East, and all fractional Section 31 Township 9 South Range 22 East, that lies within the Arredonda Grant and other lands of J. W. Phifer containing in all about nine hundred and seventy seven acres.

And it is hereby agreed that the party of the second part his heirs or assigns shall have full right of ingress and egress in and upon the said land for the term and space of two years from July 1st, A. D. 1904, for the purpose of cutting and removing the said timber, and it is hereby further agreed that the said timber shall be cut off each forty acre tract before proceeding to cut timber off the other lands except that the party of the second part may cut a few trees at the time to fill special orders from any parts of the land herein described.

And it is further agreed that the sums of money to become due upon this contract shall become due and payable as follows, to-wit: The sum of $500 to be paid cash the receipt whereof is hereby acknowledged by the parties of the first part herein, and the further sums to become due hereon shall be paid as fast as the timber is cut from the said lands the same to be inspected and adjusted between the parties hereto monthly at the option of the parties of the first part and the full sum and amount to become due upon this contract to be paid on or before the first day of July, A. D. 1905.

The covenants herein contained shall bind the parties hereto mutually.

In Witness whereof the parties hereto have hereunto set their hands and affixed their seals on this 23rd day of May, A. D. 1904.
Signed, sealed and delivered in
presence of us as witnesses.
J. G. Kellum.
J. M. Rivers.

J. W. Phifer. (Seal)
H. L. Phifer. (Seal)
J. A. Phifer. (Seal)
J. J. Godwin. (Seal)"

30 S. C.

: The bill further alleges the death of J. W. Phifer and that the appellees are his only heirs at law, there having been no administrator appointed because there were no debts against his estate; that J. J. Godwin went upon the lands and cut a large amount of timber therefrom and made certain payments on the timber aggregating, including the $500.00 cash payment, the sum of $1201.75; that on the 27th day of July, 1905, J. J. Godwin died and Minnie F Godwin was duly appointed administratrix of his estate; that after the appointment of the administratrix the appellees and the attorney for the administratrix engaged two men to count the balance of the timber then growing and standing upon the lands and estimate the value thereof, showing balance due on the contract, which was found from the estimates of the appraisers to be $1159.00. which amount the administratrix through her attorney promised to settle at once; that subsequently the administratrix effected a sale of the properties of the estate of J. J. Godwin, deceased, and attempted to sell the timber contract at public outcry to J. A. Maultsby and N. A. Mathews, two of the appellants; that the administratrix refuses to pay for the timber or any part thereof in accordance with the terms of the contract; that Maultsby and Mathews, claiming the timber by virtue of the sale of the administratrix, have declared their determination to go upon the lands and cut and fell the timber, claiming to have paid the administratrix. therefor and refusing to pay the appellees; that the appellees have notified Maultsby and Mathews not to go upon the lands or to cut any timber therefrom. but they have informed the appellees that they intended going upon the land and would begin the cutting of the timber on the 25th day of September, 1905; that the lands are wild and unimproved and chiefly valuable for the timber growing thereon; that the

appellees are the owners of the fee. simple title to the lands and of the timber growing thereon; that the contract has been forfeited by reason of the failure to make the payment on the 1st day of July, 1905, in accordance with the terms thereof, and that Maultsby and Mathews have no right to go upon and cut timber from the lands for the reason that they did not acquire any rights by their purchase from the administratrix, the estate of J. J. Godwin, deceased, having no rights in the property at the time the sale was made because of the forfeiture of the contract; that the contract does not contain any forfeiture clause; that if Maultsby and Mathews should go upon the lands and cut the timber therefrom the appellees would be without any remedy, as they "are informed, believe, allege and charge" that the estate of J. J. Godwin, deceased, is insolvent, and that Maultsby and Mathews claim to have paid the estate of J. J. Godwin, deceased, the purchase price for the timber and deny that the appellees are entitled to recover anything from them therefor; "that an injunction is necessary to prevent said trespass, and the giving of notice would greatly accelerate the injury and defeat the purpose of the writ."

The bill prays for a temporary injunction at once, without notice, against Maultsby and Mathews; for an account "as to the truth of the allegations of this bill" and as to any timber that may be cut or removed from the lands prior to the granting of the injunction; for a cancellation of the contract; for the payment to the appellees by Maultsby and Mathews for any timber they may have cut from the lands prior to the issuing of the injunction; for a perpetual injunction, and for general relief.

The bill was sworn to by H. L. Phifer, one of the appellees.

On the 26th day of September, 1905, an order for a temporary injunction was made by the court against Maultsby and Mathews, without notice, as prayed for in the bill.

On the 9th day of October 1905, J. A. Maultsby and N. A. Mathews, two of the appellants, filed their answer, and on the 11th day of said month Minnie F. Godwin, as administratrix of the estate of J. J. Godwin, deceased, the other appellant, filed her answer, both answers being under oath, the oath thereto not having been waived in the bill. We deem it unnecessary to set forth the averments in the answers, even in substance. It is sufficient to state that they were responsive to the bill, direct and positive, and denied the material allegations thereof upon which the appellees based their claim to the relief sought. Each contained the usual general denial found in answers in chancery, and the answer of Minnie F. Godwin, as administratrix, incorporated a demurrer therein.

On the 12th day of October, 1905, the appellants filed a motion for a dissolution of the temporary injunction, granted by the court, upon the bill and answers, which motion came on for a hearing on the 2nd day of November, 1905, the appellees having filed certain affidavits, when the court made an order denying the motion.

On the 6th day of November, 1905, the appellees set the cause down for a hearing upon the bill and answers.

On the 8th day of January, 1906, the court rendered a final decree therein, which is as follows: "This cause coming on to be further heard, and it appearing to the court that the complainants have set this cause down for final hearing upon the bill and answers of the defendants respectively, and the same having been duly argued and submitted by the counsel for the respective parties hereto, and the court being advised in the premises, thereupon, upon consideration hereof, it is ordered, adjudged and de-

creed that the equities are with the complainants, and that the complainants are entitled to the relief prayed for, and further, that the temporary injunction heretofore issued in this case against J. A. Maultsby and N. A. Mathews, therein and thereby restraining and enjoining them, their agents and servants, from going upon the lands described in complainant's bill, or any part thereof, and further cutting any of the timber thereon or disturbing the possession of the said property in any way whatsoever, be, and the same is herein and hereby made perpetual.

Second. That the contract made on the 23rd day of May, 1904, between J. W. Phifer, H. L. Phifer and J. A. Phifer on the one part, and J. J. Godwin on the other part, and which is attached to complainants' bill of complaint herein, be, and the same is herein and hereby cancelled and annulled, and that the complainants do, within ten days from this date, pay to the defendant, Minnie F. Godwin, as administratrix of and for the estate of J. J. Godwin, deceased, or do pay into the registry of the court, for the use and benefit of said defendant, the excess of value of the timber already cut off of the said lands, to-wit: the sum of $57.

It is further ordered, adjudged and decreed that the defendants do pay the costs of this proceeding, to be taxed up by the clerk of this court, and that execution do issue therefor upon the application of the complainants or their solicitor.

Done and ordered at Chambers, at Starke, Florida, on this 8th day of January, A. D. 1906.

                                        J. T. Wills, Judge."

From this decree the appellants have entered their appeal to this court and have assigned four errors based respectively upon the order granting the temporary injunc-

tion, the order refusing to dissolve the same, the rendering of the final decree against the appellants, and the refusal to sustain the demurrer to the bill incorporated in the answer of Minnie F. Godwin, as administratrix.

*W. S. Broome,* and *J. M. Rivers,* for the Appellants.

*W. W. Hampton,* for the Appellees.

SHACKLEFORD, C. J. *(after stating the facts.)*   It is the settled law in this court that it is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or state such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. Durham v. Edwards, 50 Fla. 495, 38 South. Rep. 926, and authorities cited therein. This principle  applies to all bills in equity, but is especially applicable to bills seeking an injunction, the rule being that the title or interest of the complainant and the facts upon which he predicates his prayer for such relief  must  be  stated  positively, with clearness and certainty. 'In other  words, the  bill must state facts and not opinions or legal conclusions. There must be something more than the opinion of the complainant, however solemnly affirmed, to authorize the interposition of the court  by  injunction.   Thebaut  v. Canova, 11 Fla. 143, text 167; P. & G. & A. & G. C. R. R. Co., v. Spratt, 12 Fla. 26, text 100, S. C. 91 Am. Dec. 747; Garnett v. J. St. A. & H. R. R. R. Co., 20 Fla. 889, text 901; Shivery & Streeper, 24 Fla. 103, 3 South. Rep. 865; State v. Black River P. Co., 27 Fla. 276, text 326, 9 South. Rep. 205; Louisville & Nashville R. R. Co. v. Gibson,  43 Fla. 315, 31 South. Rep. 230.   This is required for two

reasons, first because courts are reluctant to interfere with the free use and enjoyment of property by an owner or occupant, and will only interfere where it is clearly made to appear that the use and enjoyment are injurious to the rights of others. Thebaut v. Canova, 11 Fla. 143, text 170; Randall v. Jacksonville St. R. R. Co., 19 Fla. 409, text 426; Shivery v. Streeper, 24 Fla. 103, 3 South. Rep. 865. Second, because on an application for an injunction, the court may go into the merits as disclosed by the bill and which are intrinsic and dependent upon its express allegations and charges, but cannot grant relief except upon the matters charged in the bill. City of Apalachicola v. The Apalachicola Land Co., 9 Fla. 340, S. C. 79 Am. Dec. 284; P. & G. & A. & G. C. R. R. Co. v. Spratt, 12 Fla. 26 text 114, S. C. 91 A. M. Dec. 747; McKinney v. County Commissioners of Bradford Co., 26 Fla. 267, 4 South. Rep. 855. It is also true, when an application is made to the court for a temporary injunction or restraining order, without notice to the defendants, that the allegations in the bill should be even more carefully scanned and considered than when the defendants have been served with notice and have the opportunity of resisting the application. In other words, before granting a temporary injunction or restraining order, without notice, the court should be satisfied that a clear case is made by the bill therefor, and also that it has been clearly made to appear that it is "a case of urgent necessity, or one in which irreparable mischief will be produced if the aid of the court is denied." Thebaut v. Canova, 11 Fla. 143, text 168; Swepson v. Gall, 13 Fla. 337, text 359; Lewton v. Hower, 18 Fla. 872. Also see Allen v. Hawley, 6 Fla. 142, S. C. 63 Am. Dec. 198. It is true that Equity Rule 46 confers upon the judge to whom the application is presented the discretion and power to "grant instanter

an order restraining the party complained of until the
hearing or the further order of the court or judge," but
this should not be done "unless it is manifest to such
judge, from the sworn allegations in the bill or the affi-
davit of the complainant or other competent person, that
the injury apprehended will be done if an immediate relief
is not afforded." An affidavit to or an allegation in the
bill asserting simply the legal conclusion that, "notice to
the defendant of the application for injunction will
accelerate the injury apprehended," is not a sufficient ex-
cuse, and furnishes no reason, for dispensing with no-
tice. Richardson v. Kittlewell, 45 Fla. 551, 33 South.
Rep. 984. To justify the granting of an injunction ex
parte and without notice the allegations of the sworn
bill or accompanying affidavit must state facts showing
how and why the giving of notice will accelerate or preci-
pitate the injury complained of from which the court can
determine for itself whether the giving of notice will, or
is likely to, so result, and such facts must make it mani-
fest to the court that the giving of notice of the applica-
tion will, or is likely to, have such result. In addition,
we might state that, if notice were given to the defendant
of the time and place of the application, he would have
an opportunity of interposing his defense thereto by ap-
propriate pleadings, both complainant and defendant
would have the right to introduce evidence and the court
would then be in a position to consider the merits of the
case as presented by the entire record. P. & G. & A. & G.
C. R. R. Co. v. Spratt, 12 Fla. 26 text 114, S. C. 91 Am.
Dec. 747; Section 1466 of Revised Statutes of 1892; Sulli-
van v. Moreno, 19 Fla. 200; Fuller v. Cason, 26 Fla. 476, 7
South. Rep. 870; Campbell v. White, 39 Fla. 745, 23 South.
Rep. 555.

It is also the settled law here that not only must the allegations in the bill for an injunction be clear, direct and positive, but that they must be verified by an affidavit, which also must be direct and positive. And, where any of the material allegations in the bill are stated upon information, there should be annexed to the bill the additional affidavit of the person from whom the information is derived, verifying the truth of the information thus given. Bowes v. Hoeg, 15 Fla. 403; Ballard v. Eckman, 20 Fla. 661; Ruge v. Apalachicola Oyster, C. & F. Co., 25 Fla. 656, 6 South. Rep. 489; Doke v. Peek, 45 Fla. 244, 34 South. Rep. 896.

It is further true that a court of equity cannot grant relief when the complainant's own showing in his bill demonstrates a want of equity in his prayer, and that where there is no equity in the bill the application for an injunction should be refused. Wordehoff v. Evers, 18 Fla. 339; Sauls v. Freeman, 24 Fla. 209, 4 South. Rep. 525, S. C. 12 Am. St. Rep. 190; McKinney v. County Commissioners of Bradford Co., 26 Fla. 267, 4 South. Rep. 855; Town of Orange City v. Thayer, 45 Fla. 502, 34 South. Rep. 573.

The insolvency of the debtor is never a sufficient reason of itself for the exercise of the extraordinary power of the court by way of injunction. There must be some other equitable ground combined with insolvency. P. & G. & A. & G. C. R. R. C. v. Spratt, 12 Fla. 26. This principle has been directly applied to bills seeking to enjoin trespasses on timbered lands under section 1469 of the Revised Statutes of 1892. See Carney v. Hadley, 32 Fla. 344, 14 South. Rep. 4, S. C. 37 Am. St. Rep. 101, 22 L. R. A. 233; Doke v. Peek, 45 Fla. 244, 34 South. Rep. 896. In addition to the above cited cases, see Reddick v. Meffert, 32 Fla. 409, 13 South. Rep. 894; Woodford v. Alexander, 35

Fla. 333, 17 South. Rep. 658; Wiggins v. Williams, 36 Fla. 637, 18 South. Rep. 659, S. C. 30 L. R. A. 754; Brown v. Solary, 37 Fla. 102, 19 South. Rep. 161; McMillan v. Wiley, 45 Fla. 487, 33 South. Rep. 993, for the construction of section 1496 of the Revised Statutes of 1892, and the basis for equitable relief thereunder.

Even if the illegality of the acts alleged in the bill in the instant case, which were sought to be enjoined, were clearly apparent, in the absence of allegations showing some distinct ground of equity jurisdiction, an injunction should not have been granted. Strickland v. Knight, 47 Fla. 327, text 330, 36 South. Rep. 363, text 364.

It should also be borne in mind that where there are contradictory or inconsistent allegations in a bill, its equity will be tested by the weaker, rather than by the stronger, allegations. Durham v. Edwards, 50 Fla. 495 38 South. Rep. 926; Barco v. Doyle, 50 Fla. 488, 39 South. Rep. 103.

Of course, if the injury apprehended has already been consummated, an injunction should not be granted, as the object of an injunction is to preserve and keep things in the same state or condition, and to restrain an act which if done would be contrary to equity and good conscience, but it cannot be applied correctively. P. & G. and A. & G. C. R. R. Co. v. Spratt, 12 Fla. 26, S. C. 91 Am. Dec. 747; Smith v. Davis, 22 Fla. 406; McKinney v. County Commissioners of Bradford County, 26 Fla. 267, 4 South. Rep. 855; Tampa Gas Co. v. City of Tampa, 44 Fla. 813, 33 South. Rep. 465.

Testing the bill in the instant case by the principles enunciated, what do we find? It seeks the cancellation of the contract made by the Phifers to J. J. Godwin, deceased, for the sale of certain timber, which contract we

have fully set forth, on the ground that the same had been forfeited by reason of the failure of Godwin to make the payment on the first day of July, 1905, as specified therein, although it alleges that the contract contains no forfeiture clause, and it is not alleged that the time for such payment is of the essence of the contract; for a temporary injunction against Maultsby and Mathews. on the ground that Godwin's administratrix had effected a sale of the properties of the estate and had attempted to sell the timber contract at public outcry to Maultsby and Mathews, who claimed the timber by virtue of such sale and that they had paid the administratrix full price therefor and refused to pay the appellees anything therefor, and who had notified appellees that they intended going upon the lands and beginning the cutting of the timber on the 25th day of September, 1905, restraining them from so doing, which might be made perpetual; that an account might be taken of what was due appellees from the administratrix for balance on timber, of what might be due appellees from Maultsby and Mathews for timber cut by them prior to the granting of the injunction, that the administratrix and Maultsby and Mathews might be decreed to pay to appellees the respective amounts so found to be due, and further containing the prayer for general relief. The bill also contains an allegation that "the estate of J. J. Godwin, deceased, orators are informed, believe, allege and charge, is insolvent," and a further allegation "that an injunction is necessary to prevent said trespass and the giving of notice would greatly accelerate the injury and defeat the purpose of the writ." The only affidavit appended to the bill is that of H. L. Phifer, one of the appellees.

It will be observed that the bill does not allege that Maultsby and Mathews purchased the timber contract

from the Godwin estate *cum onere* as to the balance of the unpaid purchase price therefor, nor does it seek to recover this balance from the purchasers, but from the administratrix of the Godwin estate, to whom it alleges the purchasers claim to have paid it. Neither does the bill seek to restrain the sale of the timber contract by the Godwin estate to Maultsby and Mathews, but shows that it had already been consumated, alleging, however, that the administratrix had "no rights in the said property at the time of making said sale, the same having been forfeited by virtue of the failure to pay for the timber in accordance with said contract." As we have already seen, the bill alleges that the "contract does not contain any forfeiture clause," and an inspection of the contract shows the correctness of this allegation.

The ground upon which the cancellation of the contract is sought is the failure of Godwin or his estate to pay the balance of the purchase price, as stipulated therein. This of itself does not furnish sufficient ground for cancellation. See Harrington v. Rutherford, 38 Fla. 321, 21 South. Rep. 283. Equity abhors forfeitures and penalties. 16 Cyc. 75. It is contended by the appellees that the contract is but a mere license, but this contention cannot be sustained and we do not deem it necessary even to discuss it, as a bare inspection of the contract shows the contrary.

We have also seen that insolvency alone furnishes no ground for the interposition of a court of equity, but it must be coupled with some other equitable ground connected therewith. It will also be observed that the insolvency of the Godwin estate is not alleged positively and directly in the bill, but only upon information and belief, and the sources of the information with accompanying affidavits are not furnished. It is not even inti-

mated in the bill that Maultsby and Mathews, the pur-chasers, against whom the injunction was sought, were insolvent.   We also fail to ·find any sufficient showing made in the bill or affidavit that the threatened injury was imminent or that the giving of notice would accele-rate the same, so as to make it manifest to the judge that a necessity existed for dispensing with notice of the time and place when the motion or application for the injunc-tion would be made, as is provided by Equity Rule 46.    In other words, we are of the opinion that the bill is entirely wanting in equity and that the  temporary  injunction should not have been granted, most assuredly not in the absence of notice.   See Swepson v. Call, 13 Fla. 337.

. It should be borne in mind that the writ of injunction is an *extraordinary,* not an *ordinary,* every-day writ, and it should never be granted lightly, but  cautiously  and sparingly, and notice should always be  required to  be given, in accordance with Equity Rule 46, unless the pro-visions therein for dispensing  with  notice have  been strictly followed.  Like the writ of *habeas  corpus,*  the writ of injunction is a highly beneficial writ, but great care should be exercised in awarding it, lest it be turned into an instrument of oppression and injury.   See State v. Vesquez, 49 Fla. 126, 38 South. Rep. 830.

It necessarily follows from what has been said that the court also erred in refusing to   dissolve the  injunction upon the coming in of the answers and the motion made thereon.   As was said in Wordehoff v. Evers, 18 Fla. 339, text 340, "There can be no question that if the bill con-tained no grounds for  equitable  relief, the  injunction should have been refused in the first instance.   This being the case, the court should seek the earliest opportunity to right itself.   As a question of mere practice, it is provided by statute that in all cases, the court may on motion and

due notice, either before or after answer filed, dissolve any injunction that may have been granted." See Section 1467 of Revised Statutes of 1892. But, as we have seen, the motion in the instant case was based upon the sworn answers of the appellants, one of which had a demurrer incorporated therein. It is true that, at the hearing of the motion, affidavits from two of the appellees were produced, but we fail to see wherein their right to an injunction was strengthened thereby.

We recognize the principle so frequently enunciated by this court that, even where all the equities of the bill are denied by the answer, it is not a matter of course to dissolve the injunction, both the granting and continuing of injunctions resting largely in the sound judicial discretion of the court, to be governed by the circumstances of the case. Allen v. Hawley, 6 Fla. 142, S. C. 63 Am. Dec. 198; Carter v. Bennett, 6 Fla. 214; Linton v. Denham, 6 Fla. 533; City of Apalachicola v. The Apalachicola Land Co., 9 Fla 340, S C 79 Am. Dec. 340; Thebaut v. Canova, 11 Fla. 143; P. & G. and A. & G. C. R. R. Co. v. Spratt, 21 Fla. 26, S. C. 91 Am. Dec. 747; Scarlett v. Hicks, 13 Fla. 314; Sullivan v. Moreno, 19 Fla. 200; Randall v. Jacksonville Street R. R. Co., 19 Fla. 409; Hayden v. Thrasher, 20 Fla. 715; Garnett v. J. St. A. & H. R. R. Co., 20 Fla. 889; McKinnie v. Dickenson, 24 Fla. 366, 5 South. Rep. 34; Fuller v. Cason, 26 Fla. 476, 7 South. Rep. 870; Indian R. Steamboat Co. v. East Coast Trans. Co., 28 Fla. 387, 10 South. Rep. 480, S. C. 29 Am. St. Rep. 258; Campbell v. White, 39 Fla. 745, 23 South. Rep. 555; Baya v. Town of Lake City, 44 Fla. 491, 33 South. Rep. 400; Richardson v. Kittlewell, 45 Fla. 551, 33 South. Rep. 984; Baird v. Ellsworth Trust Co., 45 Fla. 187, 34 South. Rep.

565; Bluthenthal v. Mohlman, 49 Fla. 275, 38 South. Rep. 709; Suwannee & S. P. R. Co. v. West Coast Ry. Co., 50 Fla. 609, 39 South. Rep. 538.

While this is true, if it is plainly apparent that the bill is without equity, an injunction should not be granted in the first instance but if granted should be dissolved at the earliest opportunity by the court and the bill ordered dismissed. Sauls v. Freeman, 24 Fla. 209, 4 South. Rep. 525, S. C. 12 Am. St. Rep. 190. The fact that the bill states no cause for equitable relief distinguishes the instant case from Baya v. Town of Lake City, *supra*, Richardson v. Kittlewell, *supra*, and Baird v. Ellsworth Trust Co., *supra*.

We are forced to the conclusion that there was an abuse of judicial discretion both in issuing and retaining the injunction in force.

The case was set down for a hearing upon the bill and answers by the appellees, no replication having been filed and no testimony taken, yet a decree was rendered in favor of the appellees. This was manifestly erroneous. When the case is heard on bill and answers all the averments of the answer are to be taken as true. Garrison v. Parsons, 45 Fla. 335, 33 South. Rep. 525; City of Orlando v. Giles, decided here at the present term. Moreover, the answer contained the usual general denial found in answers in chancery, and contained no admission of the insolvency of the Godwin estate, therefore it was incumbent upon the appellees to prove that fact as well as the matters denied in the answers. Doke v. Peek, 45 Fla. 244, 34 South. Rep. 896; Parken v. Safford, 48 Fla. 290, 37 South. Rep. 567.

It follows that all the errors are well assigned and that the final decree appealed from must be reversed, with directions to dismiss the bill, and it is so ordered.

COCKRELL and WHITFIELD, JJ., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.